[Civ. No. 5328. First Appellate District, Division One.—May 27, 1927.]

HYMAN SCHWARTZ, Appellant, v. ELIZABETH J. HANDLEY, as Administratrix, etc., et al., Respondents.

[1] BROKER'S COMMISSIONS — CONTRACT WITH OWNER'S AGENT — AUTHORITY OF AGENT TO EMPLOY SUBAGENT—EVIDENCE.—In an action by a broker to recover commissions for the sale of a leasehold interest in an apartment house under a written contract of employment with the owner's agent, to whom the owner executed a power of attorney to sell without expressly authorizing the employment of a subagent, the trial court erred in excluding evidence as to the existence of a partnership between the owner and the agent.

[2] ID. — EXISTENCE OF PARTNERSHIP BETWEEN OWNER AND AGENT—POWER OF ATTORNEY — AUTHORITY OF AGENT. — In such action, if the agent holding written power of attorney was in fact the owner's partner, she had full power as a partner to enter into a binding contract as a principal for the employment of an agent to make the sale, notwithstanding the power of attorney did not expressly authorize such employment.

[3] ID.—PROCURING OF CONTRACT BY BROKER—ACTS OF PRINCIPAL PREVENTING SALE — LIABILITY FOR COMMISSIONS.—In such action, the broker having found a purchaser able, ready, and willing to purchase, and who had the necessary funds to complete the purchase, upon refusal of the principal to procure an assignment of the lease preventing consummation of the sale, the broker was entitled to his commission.

---

3.   See 4 Cal. Jur. 601; 4 R. C. L. 312.

[4] ID.—COMPLIANCE BY BROKER WITH TERMS OF CONTRACT—COMMISSIONS. — A broker properly authorized in writing to make a sale for a commission becomes entitled thereto when he has found and brought to his principal a party who is ready, able, and willing to buy on the terms prescribed.

(1) 9 C. J., p. 647, n. 11. (2) 30 Cyc., p. 490, n. 94. (3) 9 C. J., p. 624, n. 68. (4) 9 C. J., p. 596, n. 33.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Reversed.

The facts are stated in the opinion of the court.

E. M. Swartz for Appellant.

Newby & Palmer for Respondents.

TYLER, P. J.—Action to recover services rendered in the sale of a certain apartment house.

The cause is based upon a rejected claim presented against the estate of Lorin A. Handley, deceased. The complaint recites that on or about the twelfth day of August, 1920, Handley, by his duly authorized agent, entered into an agreement in writing with the plaintiff, by the terms of which plaintiff was to receive any and all amounts over and above the sum of $15,000 for the sale of the leasehold interest and furnishings of the Murray Apartments on Orange Street, in the city of Los Angeles; that on or about the seventh day of September following, he procured a purchaser ready, willing, and able to pay the sum of $19,000 for the same, and defendant agreed to sell the apartments to such purchaser for such sum and entered into a written contract for such sale; that the purchaser deposited the sum of $1,000 as part payment thereof; that subsequently on October 4, 1920, defendant, the administratrix of the estate of Handley, notified plaintiff in writing that she refused to carry out and comply with the terms of the agreement; that by reason of such refusal on her part there is now due, owing, and unpaid to plaintiff the sum of $4,000, less the

4. When broker becomes entitled to commissions, notes, 28 Am. St. Rep. 546; 139 Am. St. Rep. 225. See, also, 4 Cal. Jur. 596; 4 R. C. L. 307.

sum of $1,000 deposit which plaintiff had retained. Then follow allegations of the presentation to and the rejection by the administratrix of the claim. Defendant answering, denied the allegations of the complaint and as a special defense by way of counterclaim averred that plaintiff had wilfully and fraudulently appropriated the deposit of $1,000, and she prayed that it be adjudged that the sum was fraudulently converted, and that execution against the person of the plaintiff issue for the collection of any judgment that might be recovered. The trial court found, in substance, that all the allegations of plaintiff's complaint were untrue. As conclusions of law it was adjudged that plaintiff take nothing by his action and that defendant recover the sum of $1,000, which sum was found to have been wrongfully appropriated by plaintiff. It was further adjudged that plaintiff was guilty of fraud in incurring the obligation on which the judgment upon defendants' counterclaim was based, and it was then further adjudged that execution issue against the person of the plaintiff for the collection of the judgment as well as against his property. Plaintiff here claims that there has been a complete miscarriage of justice in depriving him of the compensation to which he is rightfully entitled, and in destroying his reputation without any evidence of bad faith on his part in any particular. Considering the nature of the judgment, we feel that the facts should be fully set forth in the opinion. During his lifetime and up to the date of his death, which occurred on September 20th, Lorin A. Handley held the title of the lease and furnishings of the Murray Apartments in the city of Los Angeles. He resided in San Francisco and did not personally attend to its management. One Elizabeth Lamb was in charge of the property, and she also managed another apartment house which was likewise held by Handley. She collected the rents of the Murray Apartments and deposited the same in the bank under the name of "The Murray Apartments, Elizabeth Lamb," and she had power and did check against this fund. What interest, if any, she had in the apartment, or the extent thereof, does not appear from the record, as the trial court rejected evidence upon this subject. That she had some interest is apparent from a reading of the entire record. Plaintiff resided at the said apartment house and was the friend and private counsel

of both Handley and Mrs. Lamb. On July 28, 1920, Handley executed and delivered his power of attorney to Mrs. Lamb. It read as follows:

"San Francisco, July 28th, 1920.

"I hereby appoint Elizabeth Lamb, 1935 West Sixth street, Los Angeles, California, my attorney with full power to sell the Murray Apartments, all my interest therein, and with full power to sign all contracts conveying all rights possessed by me in the lease of said Murray Apartments.

"(Signed) LORIN A. HANDLEY."

Upon receiving this power of attorney Mrs. Lamb employed plaintiff to dispose of the lease of the apartments, and executed and delivered to him the following writing:

"Wilshire 3927; 50051. Mrs. Lamb, proprietress.

"The Stratford Apartments,

"Sixth street at Burlington avenue.

"Los Angeles, Cal., Aug. 12, 1920.

"Mr. Hyman Schwartz; For your services, etc., in handling the sale and transfer of the lease on the Murray Apartments and for obtaining and handling the transactions with purchasers therefore, it is agreed that you shall have and receive any sum over and above the $15,000.00. It being the intention that the price over $15,000.00 received for the sale and transfer of said lease shall be retained by you, or paid to you for your services, etc.

"(Signed) LORIN A. HANDLEY, by ELIZABETH LAMB."

Concerning this authorization Mrs. Lamb testified that she had advised Handley that she had given it to plaintiff and that he had agreed to the arrangement. After receiving this authorization, plaintiff procured the services of the Century Investment Company on a commission of five per cent to assist him in procuring a purchaser. Thereafter, on September 7, 1920, plaintiff and the investment company obtained a written proposal of purchase from a Miss A. H. Martin, for the sum of $19,000, and a deposit of $1,000 was made by her as part payment of the purchase price, which deposit was paid to Mrs. Lamb. The amount of the deposit was thereafter paid by Mrs. Lamb to plaintiff on account of his services. On September 14, 1920, Mrs. Lamb executed and delivered to plaintiff the following writing:

"Mr. Hyman Schwartz:

"I herewith hand you assignment and transfer of lease covering the Murray Apartments, dated April 1, 1920, which your are to deliver to Miss A. H. Martin upon the compliance by Miss Martin of the terms and conditions of a certain offer and agreement to purchase the said lease executed by Miss Martin on the 7th day of September, 1920, and accepted of even date herewith. You are authorized to make the arrangements and do the things necessary to complete the deal. You may deduct your fees and other sums agreed upon for the consummation of the transaction and pay over the balance to me.

"(Signed.)    Lorin A. Handley, by Elizabeth Lamb."

Negotiations relative to the sale lasted up to the time of the death of Handley. Subsequent to the time the deposit was made, the Guaranty Trust and Savings Bank of Los Angeles, as executors of the estate of one John Murray, the owner in fee of the apartments, upon being requested to consent to the assignment of the lease, addressed a letter to Miss Martin advising her that upon the payment to it of the sum of $1,500 as additional security for the lease it would consent to a transfer of the leased property. Miss Martin objected to this demand, claiming it was no part of her agreement of purchase, and she insisted that the parties of whom she was purchasing settle this difficulty. Plaintiff and Mrs. Lamb thereupon attempted to adjust the matter between themselves. Before the arrangements were concluded, Handley was killed. After his death plaintiff, together with Mrs. Lamb and Miss Martin, continued to negotiate the assignment of the lease and to have defendant herein, the widow of Handley, settle the same. Plaintiff visited her and fully explained the transaction. He informed her that her deceased husband and Mrs. Lamb were indebted to him in a considerable sum for legal services, but that he, Mrs. Lamb, and Mr. Handley had agreed that this sum was to be waived in consideration of his receiving the amount of his fee as provided for in the written agreement for the sale of the apartments. He further advised her that the sale was a very profitable one as it had been acquired for the sum of $7,000 a short time previously. On September 28, 1920, defendant wrote to plaintiff advising him that the sale was satisfactory to her and suggested that

he close the same. On October 4th following she again wrote plaintiff informing him that she withdrew her approval of the sale, and revoked any and all authority of plaintiff in the premises and she demanded that plaintiff turn the matter over to her attorney. Acting upon this communication plaintiff visited her representative and fully advised him of the transaction, and presented to him the various documents. He explained to him how the amount of his fees had been merged into his agreement with Handley and Mrs. Lamb. He suggested that Miss Martin was bound under her agreement of purchase. Defendants' attorney was of a like opinion and he requested that plaintiff turn over to the estate the amount Mrs. Lamb had paid him on account of his services, and that he would close the transaction and then pay plaintiff the $4,000 due him. Plaintiff consented to this plan. He drew his check for the amount and delivered it to defendants' representative. Thereafter, on October 7, 1920, the defendant, Mrs. Handley, addressed a letter to Miss Martin advising her of her appointment as administratrix of her husband's estate, and informing her that she was ready to receive the amount due on account of the sale of the apartments in conformity with the terms of her contract, and that she desired to close the transaction. Miss Martin, who in the meantime had gone into possession of the premises, visited the bank to secure the assignment of the lease. Upon learning that the transfer had not been made and probably would not, she immediately notified Mrs. Handley in writing that she rescinded the contract of purchase and demanded the return of her deposit. It appeared in evidence that no steps had been taken by defendant or her attorney in the probate court to approve and dispose of the transaction. Thereafter plaintiff received a letter from defendants' counsel which indicated that he had doubts concerning the enforcement of the contract of sale with Miss Martin, as it was subject to the procurement of an assignment of the lease, which had not been obtained. Plaintiff, concluding that he was being unfairly dealt with, stopped payment of the check he had given to defendants' counsel, and the present suit followed. During the trial, evidence was offered to show the business relations of Mr. Handley and Mrs. Lamb, and also the interest that Mrs. Lamb had in the property. Evidence was also

offered to show that Handley had orally ratified the contract of sale. The trial court was of the opinion that plaintiff's case rested entirely upon the power of attorney that Handley had given to Mrs. Lamb and that it had to stand or fall upon that instrument. It concluded that under this authority Mrs. Lamb had no power to appoint a subagent to sell the property and that evidence of the oral ratification of the contract of sale was inadmissible, as to be effective, it should have been in writing to conform to the statute of frauds. It was of the further opinion that evidence of the relation of the parties or the interest that Mrs. Lamb had in the property was immaterial. Accordingly the evidence of ratification and all evidence going to show that Mrs. Lamb was a partner of Handley in the enterprises was rejected. [1] Conceding the power of attorney was limited to a sale and conveyance by her of the property and that the language of the instrument was not broad enough to permit the employment by her of an agent, and conceding also that the rule of the trial court in rejecting evidence of the oral ratification of the contract to be correct, we are of the opinion that the court erred in rejecting all evidence concerning the relations of the parties and the interest that Mrs. Lamb had in the property. [2] If, as she claimed in her testimony given by deposition, she was a partner of Handley, she had full power to bind him under her written contract with plaintiff. By the written power of attorney given her, Handley had consented to a sale of the premises, and this being also her desire, she then had power, as a partner, to enter into a binding contract as a principal for the employment of an agent to accomplish this purpose, notwithstanding the power of attorney did not expressly authorize such employment. [3] Plaintiff under this written contract was required to find a purchaser able, ready, and willing to purchase. That he did so, there is no question. It was in evidence that Miss Martin had the necessary funds in bank to complete the purchase. The contract entered into by her during the lifetime of Handley was a binding one. That it was never consummated was through no fault of plaintiff. It was the duty of the defendant to have procured an assignment of the lease, which she refused to do. Having so refused, and plaintiff having completed his services and earned his commission, he was entitled to

the same. [4] A broker properly authorized in writing to make a sale for a commission becomes entitled thereto when he has found and brought to his principal a party who is ready, able, and willing to buy on the terms prescribed.

From what we have said, it follows that the action of the trial court in rejecting all evidence as to a partnership existing between the deceased and Mrs. Lamb constituted error justifying a reversal of the judgment.

It is so ordered.

Knight, J., and Cashin, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 25, 1927.